UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ANGELO MOISES LLAMOZAS PALACIOS,

Petitioner,

v.

CAPT. C. LINDSEY; DAVID J. VENTURELLA; FOD JASON KNIGHT; FOD KENNETH PORTER; SECRETARY MARKWAYNE MULLIN; and ACTING USAG TODD BLANCHE,

Respondents.

Case No. 4:26-cv-00466-AKB

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

Pending before the Court is Petitioner Angelo Moises Llamozas Palacios's Amended Petition for Writ of Habeas Corpus (Dkt. 5) and Amended Motion for Temporary Restraining Order (TRO) (Dkt. 6). For the reasons explained below, the Court grants the Petition and denies the TRO as moot.

## I. BACKGROUND

Petitioner, a native of Venezuela, has lived in the United States since March 27, 2024, after immigration officials released him into the country pursuant to DHS's Alternatives to Detention program (ATD) and affixed a GPS ankle monitor on him (Dkt. 5 ¶¶ 2, 19; Dkt. 10 at 2). According to the Government, Petitioner has had approximately 129 alleged violations for his failure to comply with ATD requirements (Dkt. 10 at 2). On June 23, 2026, the Chicago Police Department charged Petitioner with misdemeanor domestic battery/bodily harm, though the charge was subsequently dismissed (Dkt. 10 at 3; Dkt. 11 ¶ 17). On July 22, 2026, Immigration and Customs Enforcement (ICE) agents seized Petitioner while agents were conducting "at large operations" in

Franklin County, Idaho (Dkt. 5 ¶ 2; Dkt. 11 ¶ 14). Petitioner is currently detained at the Jefferson County Detention Center in Rigby, Idaho (Dkt. 5 ¶ 2).

Petitioner contends his detention is unlawful because DHS and the Executive Office of Immigration Review (EOIR) have determined he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) (Dkt. 5 ¶¶ 51). Alternatively, Petitioner contends his continued detention based on "vague allegations of non-compliance" with the ATD program and a dismissed misdemeanor charge are insufficient (Dkt. 14 at 2). The Government, on the other hand, maintains that Petitioner's violations of the ATD program provide a sufficient basis for his continued detention (Dkt. 10 at 4).

On July 27, the Court ordered the Government to respond to Petitioner's petition (Dkt. 8). Briefing is now complete, and the issue is ripe for a decision.

## II. ANALYSIS

As with many other immigration-related habeas corpus petitions filed in this District, this case concerns the detention provisions at §§ 1226(a) and 1225(b)(2). The Court has repeatedly explained its disagreement with DHS's interpretation of § 1225. *See Guadarrama Ayala v. Henkey*, No. 25-cv-00682-AKB, 2025 WL 3754138 (D. Idaho Dec. 29, 2025); *Beltran Orellana v. Henkey*, No. 26-cv-00013-AKB, 2026 WL 194734 (D. Idaho Jan. 26, 2026). To the extent the Government's arguments are identical to those this Court rejected in prior cases, the Court incorporates by reference and adopts its analysis and rulings in *Guadarrama Ayala* and addresses only those arguments specific to this case.

The Ninth Circuit and this Court's previous cases definitively answer the legal question—§ 1226(a) applies because Petitioner was already present in the country and he is not subject to §§ 1225(b)(1), 1226(c), or 1231. *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424,

at *3 (9th Cir. July 30, 2026) (concluding that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)"). But Petitioner's case differs from most of the cases recently filed in the District of Idaho, in that Petitioner was previously released from immigration custody on his own recognizance and placed on an ankle monitor through DHS's ATD program. The Government argues that Petitioner was lawfully redetained under § 1226 based on his recent arrest and alleged violations of his ATD conditions (Dkt. 10 at 3–4).

Under § 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The regulations add that "when an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [certain immigration officers], in which event the alien may be taken into physical custody and detained." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9). Where a noncitizen has been redetained, "any outstanding bond shall be revoked and canceled." §§ 236.1(c)(9), 1236.1(c)(9). The noncitizen's bond or parole can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge (IJ) has determined the noncitizen "should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017). Only specific officials may revoke an alien's OREC under 8 C.F.R.

§ 236.1(c)(9). *Arango v. Hernandez*, No. 26-CV-02203, 2026 WL 2221466, at *5 (W.D. Wash. Aug. 3, 2026).

"Nothing in the brief text of the statute and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and redetention." *O.F.C. v. Almodovar*, No. 25-CV-9816, 2026 WL 74262, at *6 (S.D.N.Y. Jan. 9, 2026). That is not to say that the Government's authority to revoke release under § 1226(b) is unbridled. Other courts have held that following a bond revocation under § 1226(b), the alien is entitled to a bond hearing. *See, e.g.*, *Pena Becerra v. Sparks*, No. 2:26-CV-00212, 2026 WL 915439, at *3–4 (D. Utah Apr. 3, 2026); *O.F.C.*, 2026 WL 74262, at *6; *Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *8 (N.D. Okla. June 12, 2025). But even assuming DHS properly exercised its authority under § 1226(b) to revoke Petitioner's release based on changed circumstances, that revocation does not transform Petitioner's detention into mandatory detention without the possibility of bond. Rather, Petitioner remains detained under § 1226(a), which contemplates an individualized determination of whether continued detention is warranted.

Here, the Government relies on Petitioner's arrest for domestic violence and 129 alleged violations of the conditions associated with his ankle monitor as bases for his continued detention (Dkt. 10 at 4). Neither provides a sufficient basis for continued detention on the record before the Court.

First, the record contains insufficient information about Petitioner's domestic-violence arrest to establish that the arrest demonstrates that he poses a danger to the community or a risk of flight. The Government has provided no information regarding the conduct underlying the arrest, the circumstances leading to the arrest, or why the charge was ultimately dismissed. The Court

"cannot rely on allegations from dismissed [court] proceedings" because "[t]o do so would be to effectively find" Petitioner guilty of the alleged conduct "without his constitutional right to rebut that presupposition." *Frutos Artega v. Leyva*, No. 26-cv-00236-DCN, 2026 WL 1283869, at *2 (D. Idaho May 11, 2026). Nor has the Government identified any other criminal history to suggest that Petitioner is a danger to the community. The Court therefore cannot determine what, if anything, the arrest establishes regarding Petitioner's present dangerousness or flight risk.

Second, the Government has provided insufficient information regarding the 129 alleged violations of Petitioner's ankle-monitoring conditions. Although the number of alleged violations is significant, the Government merely states that Petitioner's GPS tracking device was "cut off or tampered with," resulting in missed call backs and strap tamper alerts (Dkt. 10 at 2; Dkt. 11 ⁋ 13). Petitioner offers a plausible explanation for the violations: he asserts that the ankle monitor caused him pain and bruising; he asked ICE to remove or adjust it; and he repeatedly attempted to contact ICE but received no response (Dkt. 14 at 4). He further states that the monitor interfered with his work and eventually loosened and fell off (*id.*). The Government has not provided evidence addressing or rebutting Petitioner's explanation. On this record, the Court cannot determine whether the alleged violations demonstrate that Petitioner willfully failed to comply with the conditions of his release or instead were, at least in part, from the problems with the ankle monitor that Petitioner describes.

The Court does not discount the significance of either the domestic-violence arrest or the alleged violations of Petitioner's ATD conditions. Nor does the Court hold that DHS lacked authority under § 1226(b) to revoke Petitioner's prior release and redetain him. But the Government has not provided enough information for the Court to conclude that Petitioner's arrest or the alleged ATD violations demonstrate that he presently poses a danger to the community or a

risk of flight such that his continued detention under § 1226(a) is warranted. *See J.E.H.G. v. Chesnut*, No. 25-CV-01673, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he [alien's] initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

The Government argues that outright release is inappropriate and that the Court should instead allow ICE to make a detention determination in the first instance, so that it may properly weigh Petitioner's recent June 2026 arrest and the ATD violations (Dkt. 10 at 4). Under the applicable regulations, however, Petitioner was entitled to an individualized custody determination at the outset of his detention. 8 C.F.R. § 236.1(d)(1). Providing a bond hearing to Petitioner now after he has been detained for weeks is insufficient to remedy the Government's failure to make that determination in the first instance and would improperly allow the Government to cure its failure to comply with the applicable custody-determination requirements through continued detention.

Accordingly, because Petitioner is subject to discretionary detention under § 1226(a) and the record does not establish a sufficient basis for his continued detention, the Court will grant the Petition and order Petitioner released from custody.

## III. ORDER

**IT IS ORDERED that:**

1. Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 5) is **GRANTED**.

2. Petitioner's Amended Motion for Temporary Restraining Order (Dkt. 6) is **DENIED AS MOOT**.

DATED: August 14, 2026

Amanda K. Brailsford
U.S. District Court Judge